Henry PHILLIPS, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

Fred SHERMAN and Adirondack Prop-
erties, Inc., Defendants.

Civ. A. No. 8494.

United States District Court
N. D. New York.

Sept. 22, 1961.

Bond, Schoeneck & King, Syracuse,
N. Y., for plaintiff, George H. Bond, Jr.,
Syracuse, N. Y., of counsel.

Taylor, White & Wilkinson, Amster-
dam, N. Y., for defendants, James W.
White, Amsterdam, N. Y., of counsel.

JAMES T. FOLEY, District Judge.

This class action is challenged in
a motion to dismiss for lack of jurisdic-
tion by both defendants. The several
stated reasons in support of the motion
may be generalized: incompatibility and
antagonism of the named plaintiff's in-
terest with that of the members of the
particular Fund involved to such degree
that would not fairly insure the adequate
representation in this type action by the
individual plaintiff as the sole repre-
sentative for the group; such small num-
ber of the members of the class involved
as beneficiaries of the Fund and the fact
of their citizenship and presence in New
York in overwhelming number that such
facts do not meet the numerosity and im-
practicability terms of Federal Rule of
Civil Procedure 23(a), 28 U.S.C.A., nec-
essary for such unusual form of action;
insufficiency of the amount in contro-
versy for federal diversity jurisdiction.
Assured legal reliance by the defendants
in addition to these reasons for dismissal
is based upon a recent and noted ruling
in the Court of Appeals, Second Circuit,

in a situation the defendants argue is indistinguishable from the one presented. Matthies v. Seymour Manufacturing Company, 2 Cir., 270 F.2d 365; reconsideration en banc and rehearing denied 2 Cir., 271 F.2d 740, reversing id. D.C., 23 F.R.D. 64, certiorari denied 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 544. This class litigation caused extensive writing in the District Court and Court of Appeals, and the opinion by Chief Judge Lumbard for the Court of Appeals that prevailed needs deep study and intense concentration to comprehend the import as to the use of the class action form in trust litigation. If such authority and its holding is indistinguishable as to the trust action here, the confidence of the defendants that such ruling would be decisive is not misplaced because the law promulgated by the Court of Appeals, Second Circuit, must be followed when clearly applicable. 1 Moore's Federal Practice, 2nd Ed. pgs. 4059–4063; Abbott v. United States, D.C., 61 F.Supp. 989. It is not correct, of course, that the denial of certiorari by the Supreme Court indicates affirmance. Although it gives little comfort to the vanquished, such denial, it is said, is not to signify approval or disapproval on the merits. United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361; House v. Mayo, 324 U.S. 42, 48, 65 S.Ct. 517, 89 L.Ed. 739; Sunal v. Large, 332 U.S. 174, 181, 67 S.Ct. 1588, 91 L.Ed. 1982. The position of the Plaintiff herein is that he is a proper fellow-beneficiary of the trust fund involved with the same interest at stake; that he will fairly represent all the others and is so entitled by reason of the factual background to seek the relief demanded in the complaint as their representative as one in a true class action pursuant to the combined requirements and provisions of Federal Rule 23(a) (1). The answer by the plaintiff to the Matthies ruling is that the defendants interpret it too broadly and its narrow scope of holding does not invalidate this class action.

It does seem incongruous that this simply stated federal rule allowing class action has provoked such a superabundance of text and judicial writing. 3 Moore's Federal Practice, 2nd Ed. pgs. 3404–3560. I intend to minimize my addition as much as possible, but it is necessary to summarize the factual background which, although somewhat complicated, does not need the great detail outlined in the affidavits and briefs submitted for the purposes of this decision. A settled and good sense approach requires that the integrity of the class action within the rule be determined by an analysis of the action and its factual background and the interrelation of the parties. Citizens Banking Co. v. Monticello State Bank, 8 Cir., 143 F.2d 261, 263. Further, Judge Smith, now an active Judge of the Court of Appeals, Second Circuit, emphasized in his elaborate and careful District Court opinion in the Matthies case that the nature of the relief sought in a given proceeding thus has a definite bearing on indispensability or lack of it of the beneficiaries of the trust. Matthies v. Seymour, D.C., 23 F.R.D. 64, at page 70.

The named defendant, Adirondack Properties, Inc., was a name change made November 22, 1957, from Adirondack Foundries and Steel, Inc., for reasons hereinafter stated. Both are New York corporations. The original company was organized in 1924 and engaged until November 1, 1957, in the manufacture of castings and other steel products, owning land, foundry and machinery for the conduct of such business in Albany County, near Watervliet, New York. The named defendant, Fred Sherman, was the President of the original company when it was organized, was its President on November 1, 1957 and apparently is still acting as such President of the newly named Company. Business reverses occured for several years prior to 1957. Negotiations during the months of September, October and November, 1957, culminated in an agreement with Consolidated Foundries and Manufacturing Corp., thereafter approved by the stockholders and directors whereby the inventory and certain machinery were sold

to Consolidated, and the plant and certain equipment leased to it for fixed rental, with an option to Consolidated to purchase the property at a specified price on or after November 1, 1962.

Important only to this litigation is the impact of these business developments and changes as they affected a praiseworthy Employees Savings, Profit Sharing and Retirement Plan formed November 1, 1949. Such plan is attached as Exhibit D to a factual, illuminating and comprehensive supplemental affidavit filed in this motion by the defense. Under the terms of the plan Adirondack was to make contributions from its profits not to exceed 15% of the total compensation of the members of the Plan, and the employees were permitted to contribute 5% of their earnings. The employees of Adirondack under the new business arrangement were taken over on November 1, 1957 by Consolidated. The Adirondack Profit Sharing Plan at this time had a substantial fund of $563,303.02. Under the terms of the Adirondack Plan, participation of employees ended with their employment by Adirondack. When the transaction was completed with Consolidated, there were forty-five members in this plan. Twenty-eight members, including the representative-plaintiff, requested cash payments and $313,648.33 was paid directly to them. Two participants, Fred Sherman and Fred Kane, are still members of the Fund. Fifteen members of the Adirondack Fund transferred their credit balance to the Trustee of a similar Consolidated Plan effective January 1, 1958. (Exhibit F, Supp.Aff. Sherman).

From this intricate background as reviewed, with many other details of amendment, Internal Revenue approval and rulings omitted, the single and narrow issue raised by the complaint herein is that shares of the common stock of the Adirondack corporation purchased over the years by Sherman as Trustee of the Adirondack Profit Sharing Fund, were purchased in November 1957, at less than true value by Adirondack, Sherman being President, and retired as

treasury stock. The complaint is vague, indefinite and inaccurate in many respects and each material allegation is founded upon information and belief. One example is the information and belief allegation that the Fund owned 10,000 shares in August 1957, when the itemized purchases in the supplemental affidavit with dates and years demonstrate a total of 4,000 shares purchased at much lower prices and then finally sold by the Fund to the Company at $20 per share. This value was accepted by 92% of the stockholders and thereafter approved by the directors. It is interesting to note that the Plaintiff, now a resident of Connecticut, admits in an affidavit he "chaired" the stockholders' meeting approving the sale or lease of the assets of Adirondack and the purchase of the common stock from the stockholders at $20 per share. Then, as a Director of Adirondack, he voted in favor of the resolution to tender the offer to buy the stock for $20 per share. At this time, the Plaintiff was Executive Vice President of Adirondack and held 1,000 shares of the common stock which he sold to the Company at the $20 value without legal individual complaint as yet.

Allegation 9 of the complaint, a material one, without stating any figures of price paid or that should have been paid, claims again upon information and belief, that the Fund did not receive the true value the shares held. Allegation 10 contains the charge that the sale at less than true value constituted a fraud upon plaintiff and other similarly situated members of the Fund. There is not the semblance of particular facts listed to support this charge, as should be done in accordance with Rule 9(b), Federal Rules of Civil Procedure; see also 2 Moore's Federal Practice, pgs. 1907–1912; Voliva v. Bennett, 5 Cir., 201 F.2d 434, 436; Rubens v. Ellis, 5 Cir., 202 F.2d 415, 417. These factors outlined might be indulging in the merits of the action which is not the problem now. Under the liberal federal procedures such oddities may not even be fatal to the pleading, but in my judgment such ob-

vious defects are noteworthy in evaluating the discretion to be exercised in the allowance of the class action procedure.

However, I do agree that the Matthies decision under the facts of this situation is decisive. The holding of that case is not limited to the number and impracticable proposition outlined in Rule 23(a). At the beginning, Judge Lumbard emphasizes additional explicit ruling:

"Because we also hold that the actual or representative joinder of all the beneficiaries of these trusts was required by the nature of the dominant claims asserted in the complaints, and because it appears from the record that the joinder of any other beneficiary as a party plaintiff will destroy the requisite diversity of citizenship, we reverse the orders of the district court in both actions and order the actions dismissed." 270 F.2d at page 368.

He reiterates this reasoning several times, and in his decision of the shareholders action (which we do not have here) at page 374, he returns again to the admonition that the beneficiaries are indispensable to an action to surcharge the trustee and restore corpus, and concludes that if the beneficiaries ought to be in court when surcharge is sought against the trustee they ought also to be in court when a third party is sought to be held for defaults injuring the trust whether it is the stock of the trust that is affected or other property. That is exactly the situation here. The claim is to surcharge the trustee and restore money to the Fund.

I do not like to indulge in the numbers game aspect of Rule 23, but my count would be twenty-nine potential plaintiffs, which to me is not too numerous to handle from my own experience of multiple parties. Of course, as numbers are not decisive on the question, the impracticability feature as stated in the landmark case, Hansberry v. Lee, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22, must be considered. Joinder must be difficult or impossible because some members of the class are not within the jurisdiction or their whereabouts are unknown. I am not at all satisfied to formulate such judgment upon the information and belief statement that some members of the Fund are residents of States other than New York, and that some reside as far distant as California. There is no identification made by the naming of even one. It would seem a reasonable assumption that not many employees of a local foundry are far distant from this Courthouse. At least the burden of proving impracticability in this respect is not convincingly shown to impel discretion in favor of exercising the power to retain this class action in the federal jurisdiction. The contrast is evident in the Matthies case (23 F.R.D. at page 76) when Judge Smith in the District Court opinion could find unquestionably that nineteen members of the class lived outside the jurisdiction, eleven in New Jersey and eight in California.

The motion to dismiss the complaint is granted as to both defendants, and it is

So ordered.