435 F.2d 976
 Randolph PHILLIPS, in his own right individually and as Chairman of the Committee for Fair Play for Voters, Ethel Frankel, Nina Phillips and Dr. Samuel J. Phillips in their own right individually and as members of the Committee for Fair Play for Voters, Plaintiffs-Appellants,
v.
Nelson A. ROCKEFELLER, Governor of the State of New York, and John P. Lomenzo, Secretary of State of the State of New York, Defendants-Appellees.
 No. 495.
 Docket 35659.
 United States Court of Appeals, Second Circuit.
 Argued December 9, 1970.
 Decided December 11, 1970.
 As Amended February 2, 1971.
 
 Randolph Phillips, pro se.
 Bennett Frankel, New York City, for plaintiffs-appellants, Ethel Frankel and others.
 Mark T. Walsh, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, on the brief), for defendants-appellees.
 C. Dickerman Williams, New York City (Baker, Nelson, Williams & Mitchell, New York City, on the brief), amicus curiae for James L. Buckley.
 Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and CLARIE, District Judge.*
 LUMBARD, Chief Judge.
 
 
 1
 The sole question which we find necessary to reach in this case is whether the language of the Seventeenth Amendment to the United States Constitution that the United States Senators from each state shall be "elected by the people thereof" requires that a candidate for the Senate receive a majority of the votes cast at the general election in order to be elected.[1] On this ground the plaintiffs here seek to prevent the defendant state officials from certifying James L. Buckley as the duly elected Senator from New York. At the general election held in New York on November 3, 1970, Buckley received only thirty-nine percent of the votes cast, while the other two candidates, Richard L. Ottinger and Charles E. Goodell, received thirty-seven percent and twenty-four percent respectively. We disagree with plaintiffs' contention and affirm the judgment below.
 
 
 2
 This suit was commenced in the Southern District of New York on November 4, 1970 and was originally based upon the Seventeenth Amendment and 28 U.S.C. §§ 2281 and 1331 (1964).[2] Plaintiffs allege that they are citizens and registered voters of the state of New York who voted in the November 3, 1970 election, and that they bring this action "in their own right individually and as Chairman and members respectively of The Committee for Fair Play for Voters and also on behalf of all registered voters similarly situated." They contend that a candidate for the Senate cannot be "elected by the people" within the meaning of the Seventeenth Amendment unless he receives a majority of the votes cast for that office in the election. In their reply memorandum in the district court, plaintiffs changed the jurisdictional bases for their complaint from 28 U.S.C. §§ 2281 and 1331 to 28 U.S.C. § 1343(3) and 42 U.S.C. §§ 1983 and 1988 (1964).[3] The district court treated the complaint as having been amended to allege the new jurisdictional bases.
 
 
 3
 The language of N. Y. Election Law § 296 is similar to that of the Seventeenth Amendment. It provides that a United States Senator shall be "elected by the people * * *."[4] Plaintiffs claim that the execution and enforcement of this section so as to certify a candidate who received only a plurality of the votes violates their right under the Seventeenth Amendment to be represented by a Senator elected by a majority of the people. They also claim that Section 296 itself is unconstitutional because it makes no provision for a run-off election between the two leading candidates in the event that no candidate receives a majority vote at the general election.
 
 
 4
 Plaintiffs sought the following relief in the district court: (1) an injunction prohibiting the defendants from enforcing § 296 of the Election Law of the State of New York, and from "certifying there-under" the election of any candidate as United States Senator unless a run-off election is held between the two candidates who polled the most votes; (2) a declaratory judgment that § 296 of the Election Law of the State of New York in failing to provide for a run-off election is too vague and inadequate to constitute a lawful "and constitutional exercise of the legislative power of the State of New York under the Seventeenth Amendment to the Constitution of the United States"; (3) a mandatory injunction ordering Governor Rockefeller to issue a writ for a run-off election between the two leading candidates, and (4) the convening of a three-judge statutory court pursuant to 28 U.S.C. §§ 2281 and 2284 (1964).
 
 
 5
 Judge Edelstein dismissed plaintiffs' complaint and denied their motion for a three-judge court. As we think it unnecessary to pass upon the grounds relied upon by Judge Edelstein for dismissing the complaint, we merely note those grounds in the margin.[5]
 
 
 6
 On December 7, 1970, plaintiffs moved this court to expedite the appeal and to grant an injunction pending appeal prohibiting defendants from certifying Mr. Buckley as the duly elected Senator from New York. We denied the injunction and heard argument of the appeal on December 9.
 
 
 7
 On the appeal, plaintiffs reiterate their arguments made below. Defendants contend that the district court was correct in holding that it lacked subject matter jurisdiction and that no substantial federal question was raised; and they claim further that the district court lacked jurisdiction because only the Senate itself has jurisdiction over the legality of Senatorial elections under Article I, Section 5, Clause 1, of the Constitution,[6] and finally that the decision below should be affirmed on the grounds of prematurity, abstention, failure to include the interested candidates as indispensable parties, and the bar of the Eleventh Amendment. Counsel for James Buckley filed a brief amicus curiae and argued that the Seventeenth Amendment was not meant to require the election of Senators by a majority of the people.
 
 
 8
 Since we find this case so clear on its merits, we do not reach the procedural and jurisdictional points relied on by the district court and argued by defendants on this appeal.
 
 
 9
 Plaintiffs' argument that the Seventeenth Amendment requires Senators to be elected by a majority of the people is admittedly novel; but just as surely, in view of the history and intent of that amendment, it is devoid of merit. When the Seventeenth Amendment was being formulated in 1909-1912, prior to its adoption in 1913, the drafters made a deliberate choice to use the words "elected by the people" in the light of the prior history of the selection of Senators.
 
 
 10
 Article I, Section 3, of the Constitution as originally drafted provided that "The Senate of the United States shall be composed of two Senators from each State, chosen by the Legislature thereof, * *." This language was construed in practical application to mean election by a plurality of the legislators of a state until July 25, 1866. On that date, a statute enacted by the 39th Congress requiring that Senators be chosen by a majority of the legislators became effective. Hence in 1912, when the drafters of a constitutional amendment calling for popular elections of Senators embarked on the task of providing for such elections, they had before them the language of the 1866 statute requiring a majority. Indeed all the Senators then in office had been elected according to the 1866 statute. Yet the draftsmen chose not to use the word "majority" in the amendment.
 
 
 11
 Instead, Congress chose to follow the constitutional language of Article I, Section 2, which provides that members of the House of Representatives shall be "chosen every second Year by the People of the several States, * * *." Since the purpose of the Seventeenth Amendment was to effect the popular election of Senators, its draftsmen naturally looked to the provision of the Constitution providing for the manner of election to that house of Congress whose members had always been elected by popular vote. Plaintiffs themselves agree with this conclusion for they state in their brief that when the method of choosing Senators "was changed in 1913 the method of electing Representatives was plainly intended to be applied to Senators."
 
 
 12
 The key question, then, involves the meaning of the language in Article I, Section 2, "chosen by the People." It seems clear that that language was not intended to mean that a candidate must receive a majority of the votes cast at the general election in order to be elected to the House of Representatives. When the framers of the Constitution intended that a majority be required, they were quite capable of saying so. Thus in Article II, Section 1, of the Constitution providing for the election of the President, by electors chosen in the various states, the Constitution provided that
 
 
 13
 "the Person having the greatest Number of Votes shall be the President, if such Number be a Majority of the whole Number of Electors appointed * * *"
 
 
 14
 In the Twelfth Amendment which superseded Article II, Section 1, effective September 25, 1804, it was again provided:
 
 
 15
 "The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed."
 
 
 16
 Thus it follows that if the drafters of Article I, Section 2, had intended to require election by a majority of the people, they would have said so.
 
 
 17
 Morever, the language of Article I, Section 2, has never been construed to mean that a candidate must receive a majority of the votes cast in order to be elected to the House. On the contrary, the provision has always been construed to mean that the candidate receiving the highest number of votes at the general election is elected, although his vote be only a plurality of all votes cast. Our political history records many elections of Representatives to Congress, both before and after 1913, where the winner received only a plurality of the votes. Hence when the drafters of the Seventeenth Amendment chose to use the language of Article I, Section 2, they surely knew that that language had permitted elections by a plurality.
 
 
 18
 In sum, the deliberate choice of the drafters of the Seventeenth Amendment to use the words of the section providing for elections to the House, rather than the words of the 1866 Act, demonstrates that they intended the same result — that is, that elections to the Senate need not be by a majority of the votes cast. This conclusion is supported by the fact that the Seventeeth Amendment, like all constitutional amendments, had to be passed by a two-thirds vote of the Senate; and since the Senators at that time had themselves been elected by a majority of the legislators, they surely recognized that the new amendment was specifically not so providing.
 
 
 19
 It is noteworthy that in the fifty-seven years since the adoption of the Seventeenth Amendment it has never before been contended that that amendment requires a Senator to be elected by a majority of the voters, even though numerous Senators since 1913 have been elected by a plurality of the vote. In 1968, for instance, Senators from the states of Alaska, Maryland, and New York were all elected by less than a majority of those voting. Thus, not only the drafters' deliberate choice, but also the custom and usage of fifty-seven years indicates that the Seventeenth Amendment does not require election to the Senate by a majority of the people.
 
 
 20
 Article I, Section 4, of the Constitution provides that the "Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." The New York Election Law does not specify whether, in the case of elections to these offices, a majority or a plurality is required. However, in interpreting the words of the Election Law that Senators shall be "elected by the people," New York has adopted the practice of permitting a plurality candidate to be duly elected, without providing for a run-off election. As shown above, that interpretation is consonant with the Seventeenth Amendment. The New York Constitution and laws respecting other elections, moreover, demonstrate a policy in favor of permitting elections by a plurality. Article IV, Section 1 of the New York Constitution provides that at elections for governor and lieutenant-governor, "[t]he respective persons having the highest number of votes cast jointly for them for governor and lieutenant governor respectively shall be elected." Similarly, in the case of Presidential electors, New York Election Law § 290 expressly provides that the whole number of electors having the highest number of votes shall be declared and duly appointed electors.[7]
 
 
 21
 Following this policy, New York has permitted the candidate for United States Senate who receives the highest number of votes, even if that number be a mere plurality, to be duly elected; and the Governor and Secretary of State intend to certify James Buckley to the President of the Senate as the United States Senator from New York, without providing for a run-off election. For the reasons set out above, we hold that such certification would be in accord with the mandate of the Seventeenth Amendment that Senators be "elected by the people."
 
 
 22
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation
 
 
 [1]
 The Seventeenth Amendment provides:
 "The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.
 
 
 [2]
 Section 2281 provides that only a three-judge district court may enjoin the enforcement of a state statute on the grounds of unconstitutionality. Section 1331 gives district courts jurisdiction to hear cases raising "federal questions," but requires that the amount in controversy exceed $10,000, exclusive of interests and costs
 
 
 [3]
 Section 1343 provides:
 "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."
 Section 1983 provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 Section 1988 provides:
 "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."
 
 
 [4]
 Section 296 of the New York Election Law (McKinney Supp.1970) provides in pertinent part:
 "At the general election next preceding the expiration of the term of office of a United States senator from this state, a United States Senator shall be elected by the people for a full term of six years."
 The remainder of section 296 makes provision for the filling of a vacancy in the office of the United States Senator from New York.
 
 
 [5]
 The primary basis for Judge Edelstein's decision was that the district court lacked subject matter jurisdiction under all of the sections alleged. Section 2281 was insufficient to confer jurisdiction, he stated, because a jurisdictional predicate apart from that section must be present before a three-judge court may have jurisdiction over the matter; § 1331 was insufficient because it requires that the matter in controversy exceed $10,000; § 1343(3) was insufficient because it merely confers upon federal district courts jurisdiction over civil actions already authorized by other provisions of law; and § 1988 was insufficient because it is not a jurisdictional provision but one addressed to the rule of law and scope of the remedy to be applied. Finally, according to Judge Edelstein, § 1983 did not confer jurisdiction upon the court because to invoke that section, the claim must be predicated upon the denial of a federal constitutional or statutory right by a person acting under color of state law. In this case, said Judge Edelstein, any alleged deprivation would not come about pursuant to state authority, but rather pursuant to federal authority; § 296 merely requires that the election be held and that is an accomplished fact, whereas it is federal law, namely 2 U.S.C. §§ 1a and 1b (1964), that requires the certification of the winner, which is what plaintiffs are now challenging. According to Judge Edelstein, then, the defendant state officials, in certifying Mr. Buckley to the President of the Senate, would be acting pursuant to federal, rather than state, authority. Hence, concluded the district court, § 1983 could not confer subject matter jurisdiction
 The district court also found that plaintiffs' complaint did not raise a substantial federal question, since their target is § 296 of the New York Election Law, whereas the election of November 3, 1970 was really held pursuant to a federal mandate.
 
 
 [6]
 Article I, Section 5, Clause 1 of the Constitution provides: "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members * * *."
 
 
 [7]
 The same must be true in most of the other states of the Union, for in the 1968 Presidential election, the electors from 28 states were elected by a plurality. In that election Nixon received the full complement of electoral votes from 32 states, yet in 17 of those states the electors finally appointed received only a plurality of the votes cast. Likewise, of the 14 states which Humphrey carried, the electors in 8 of them were elected by a plurality; and of the 5 states which Wallace carried, the Wallace electors in 3 of them received only a plurality