**Pedro LOPEZ, individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**George K. WYMAN, individually and as Commissioner of the Department of Social Services for the State of New York, and George G. Sipprell, individually and as Commissioner of Erie County Department of Social Services, Defendants.**

Civ. No. 1971–308.

United States District Court,
W. D. New York.

July 12, 1971.

Marvin M. Karpatkin, New York City, for plaintiff; John E. LeMoult, New York City, Michael A. O'Connor of Legal Aid Bureau of Buffalo, Inc., Herman Schwartz and Edward I. Koren, Buffalo, N. Y., and Burt Neuborne of New York Civil Liberties Union, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for defendant Wyman; Ruth Kessler Toch, Sol. Gen., and Jean M. Coon, Asst. Atty. Gen., of counsel.

Mario Gambacorta, Asst. County Atty., Erie County, N. Y., for defendant Sipprell.

CURTIN, District Judge.

This is an action challenging the constitutionality of the recently enacted New York welfare residency statute, Chapter 606 of the Laws of New York (1971),[1] on the grounds that it is violative of the

1.

STATE OF NEW YORK
R. R. No. 119
7059—A
1971–1972 Regular Sessions
IN ASSEMBLY
March 2, 1971

Introduced by Mr. CORBETT—read once and referred to the Committee on Rules—amended on the special order of third reading ordered reprinted as amended retaining its place on the special order of third reading

AN ACT

To institute a temporary requirement of residency for eligibility for assistance and care during a period of emergency which threatens the economic and social viability of the state

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

The state of the economy in New York and elsewhere is one of severe stringency. The combination of inflation and high unemployment undermines the capacity of governments at all levels to meet the need for public services and to deal effectively with growing social problems, as well as the capacity of individual citizens to provide for their own needs.

The challenges facing the state and local governments today are manifold and are particularly acute in our urban areas.

EXPLANATION—Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

Many people are living in seriously overcrowded housing and under substandard conditions. The housing shortage is acute and rapidly becoming worse. Narcotics addiction and other forms of drug abuse have reached epidemic proportions. In many urban areas, schools, social services and health resources are seriously overburdened. Crime, dirty streets and pollution also plague our cities. Essential public services, including fire and police protection, sanitation and education, are simply becoming severely overloaded.

The growth in the welfare burden during this time of inflation and a tightening job market heightens these problems both by increasing the demand for other essential services and by necessitating a diversion of limited funds from them.

It has been a consistent state policy to provide for the sustenance of all those persons unable to provide for themselves.

The state has realistically determined the minimum needs of sustenance in New York. In the face of continually increasing requirements of funds to meet these needs, both the state and local governments have continued to pay their shares. The state's share has risen from $619,691,000 in fiscal year 1967–68 to $988,773,000 in 1970–71. Based on the rate of growth in welfare costs experienced in that period, the welfare expenditure in the state would be double the 1970–71 level by fiscal year 1975–76. At the same time that dollar costs have spiraled upwards, a corresponding pattern has developed for the number of persons on welfare. New York state today has one and one-half times as many people on welfare per thousand of population as the rest of the country.

State and local governments cannot continue to finance from their own revenues the escalating costs of providing the educational, fire, police, sanitation, health and other services needed to meet the varied problems they face. Inflation and the rapid growth in the cost of providing basic public services have resulted in the highest state and local tax burden in the nation. The additional tax effort necessary to meet the projected financial requirements of welfare would only accelerate the flight of job producing and revenue producing business thereby further undermining the capacity of governments in this state to meet their responsibilities. In recognition of the impact that additional taxes would have, the legislature has already imposed severe budgeting restrictions on all aspects of the operations of state government and on the levels of local assistance provided by the state.

The welfare problem is one result of the federal government's failure to return adequate revenues to the states on an equitable basis. Despite the magnitude of the welfare problem in New York as compared to other states and despite our major effort to meet that burden, this state has received the lowest possible percentage of federal assistance of those states providing full service. The rate of federal aid for welfare is not related to the amounts paid by states to persons in need, nor to the percentage of such persons who reside in such states, nor to the maintenance of effort by such states as demonstrated in their willingness to tax their residents to support their assistance

First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff seeks an order that this action be maintained as a class action pursuant to Rules 23(b) (2) and (c) (1) of the Federal Rules of Civil Procedure, a judgment declaring the statute unconstitutional, and preliminary and permanent injunctive relief. Although plaintiff seeks to restrain defendants from enforcing a state statute, and a district court of three judges would therefore appear necessary, plaintiff argues that this case is governed by Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and convening a three-judge court is accordingly inappropriate.

Jurisdiction is alleged under Title 28, United States Code, Sections 1331, 1343 (3) and (4), 2201, and 2202.

■ This court cannot agree with plaintiff's argument that this case should be decided by a district judge alone. In view of the arguments which defendants have raised in the defense of the challenged statute, the most direct and expedient route to a final determination of the merits of plaintiff's action is to convene a statutory three-judge court pursuant to Title 28, United States Code,

---

programs, nor to the extension of such assistance to needy persons not included within the categories of federal public assistance.

A significant proportion of the state's public assistance load, in terms of the numbers of recipients and the level of expenditures, is directly attributable to the national inequality of public assistance payments. Since New York has provided sufficient living allowances for needy persons and other states have not, there has been and continues to be a significant migration of persons from those states into New York state as the direct result of lack of welfare assistance and services provided by the states from which they came. The continued growth in the number of persons in need of public assistance threatens the capacity of state and local government to continue to provide and finance adequate levels of all public services, including public assistance, for those residents here as well as those coming into the state. Even with the reduction this year of public services in every field and a substantial increase in taxes, it has been necessary, for the first time, to reduce the proportion of public assistance allowances below one hundred per cent of determined need. Further reductions will clearly be necessary in the immediate future unless the rate of increase in the number of such recipients substantially abates. For persons unable to provide for themselves to come to New York state from throughout the nation is therefore unfair both to those who live here as well as to those who would seek to come here at this time and under these circumstances.

The greatest public good and least public harm will come from the maintenance of the levels of public assistance rather than from the stretching of this state's limited state and local funds to cover persons who have not yet established dependence upon them—those who are the most recent arrivals in the state. To provide for the needs of all persons in the state, the legislature finds the establishment of a five-year emergency period during which the state will require a one-year residency as an essential step in protecting the state's economic and social viability.

2. Notwithstanding any other provision of law, and for so long as the state shall not be disqualified from federal reimbursement for its public assistance program, no payment for public assistance and care of any kind shall be made to any person applying therefore after the effective date of this act and during a period of five years thereafter which applicant has not been a resident of the state for the period of one year next preceding such application except that upon application making a showing of need, a social services district may furnish a person not entitled to assistance and care under this act with transportation and attendant expenses to another state or country, provided that such person has resided therein during the past twelve months or has legally responsible relatives therein or friends willing to undertake the obligation to support him, and in such event, the expenditure shall be reimbursed to the social services district upon the submission of an account therefor and upon the audit and warrant of the comptroller.

§ 3. This act shall take effect immediately.

Sections 2281 and 2284. See Gong v. Kirk, 375 F.2d 728 (5th Cir. 1967).

This court finds that the constitutional question is substantial, that the complaint alleges a basis for equitable relief, and that the case otherwise comes within the requirements of the three-judge statute. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

Defendants concede that this action may proceed as a class action composed of all persons eligible for the receipt of public assistance except for their failure to meet the one-year residency requirement. It is ordered that plaintiff may proceed as representative of the described class. See Rule 23(a), Federal Rules of Civil Procedure.

■ Notification of all members of the class is required as a matter of due process. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, at 564 (2d Cir. 1968). Considering the indigency of the plaintiff, the circumstances of this case, and the adequacy of current media coverage, the defendants are directed to forthwith notify the local departments of social services throughout the state of the contents of this order, and to see to it that appropriate notice is posted in these offices. See C. A. Wright, Handbook of the Law of Federal Courts, 313 (2d ed. 1970).

Turning to plaintiff's application for a temporary restraining order, the court has reviewed the growing list of prior decisions on residency requirements to determine whether plaintiff has met its burden of making a sufficiently clear showing of probable success and possible irreparable injury pendente lite if the temporary injunctive relief is denied. See Title 28, United States Code, Section 2284(3); Dino DeLaurentiis Cinematografica, S.p.A. v. D–150, Inc., 366 F.2d 373 (2d Cir. 1966). In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the United States Supreme Court struck down the one-year welfare residency requirements of Connecticut, Pennsylvania, and the District of Columbia. Within the last month, in Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), the Supreme Court, in an opinion by Justice Blackmun, struck down the welfare residency statutes of Arizona and Pennsylvania as applied to aliens. In Gaddis v. Wyman, 304 F.Supp. 717 (N.D.N.Y. and S.D.N.Y.1969), a consolidated three-judge court declared a provision of the New York Social Services Law, which required state officials to deny Aid For Dependent Children to anyone applying within one year after arrival in New York unless the applicant could prove his or her entry was not for the purpose of securing public assistance, unconstitutional. This decision was affirmed per curiam by the Supreme Court. Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970). In *Gaddis*, the district court opinion expressly recognized the difficulties of the government of New York in seeking to preserve fiscal integrity and its welfare programs. As a matter of constitutional law, however, the court noted that the residency requirement was not the best solution to the problem. The court concluded:

> "The failure of state attempts to fence out migrant indigents intent upon exercising their constitutional right of travel has led some to conclude that the welfare budget problem 'has become the common responsibility and concern of the whole nation,' * * * the solution of which depends upon adoption of national welfare laws of the type recently recommended by * * * President [Nixon], which would assure the needy, wherever located, of minimum assistance. See N. Y. Times, Aug. 9, 1969, p. 10. In any event the solution must be found elsewhere than in the type of statute here under review." 304 F.Supp. at 724.

■ In view of the authorities reviewed above and cited hereafter, and without passing on the ultimate merits of the questions raised in this action, it is clear that plaintiff has made a sufficient showing of probable success on the merits. See King v. New Rochelle

Municipal Housing Authority, 442 F.2d 646 (2d Cir. 1971); Cole v. Housing Authority of City of Newport, 435 F.2d 807 (1st Cir. 1970); and see generally Note, Residence Requirements After Shapiro v. Thompson, 70 Colum.L.Rev. 134 (1970).

The court is also satisfied that plaintiff and other members of his class will suffer irreparable injury if an immediate injunction is not granted. They are being denied public assistance at the present time. Some are accepting the state offer of transportation back to other states. In either case, the irreparable injury to individuals or families is certain and great. Until the outcome of this lawsuit can be determined, the status quo ante litem should be preserved. The plaintiff's application for a temporary restraining order enjoining the defendants from enforcing Chapter 606 pending this litigation is granted forthwith. Title 28, United States Code, Section 2284(3).

Therefore, the Honorable Chief Judge of the United States Court of Appeals for the Second Circuit is hereby requested to convene a three-judge court to hear and determine this cause.