Jean GLODGETT et al., Intervenors,

v.

Joseph BETIT, Individually and as Commissioner of the Vermont Department of Social Welfare; Elliott Richardson, Individually and as Secretary of the Department of Health, Education and Welfare.

Civ. A. File No. 6550.

United States District Court,
D. Vermont.

Oct. 23, 1973.

Supplemental Opinion Dec. 28, 1973.

212

Richard S. Kohn, Vermont Legal Aid, Inc., St. Johnsbury, Vt., for plaintiffs.

Carter LaPrade, Asst. U. S. Atty., Rutland, Vt., for defendant Richardson.

D. Eugene Wilson, Asst. Atty. Gen., Montpelier, Vt., for defendant Betit.

Before OAKES, Circuit Judge, and HOLDEN and COFFRIN, District Judges.

## OPINION

HOLDEN, District Judge.

The Vermont Department of Social Welfare denies payment under its "Aid to Needy Families with Children" (ANFC) program to families in which the father receives unemployment compensation.[1] During any week in which the father receives unemployment benefits, his family is held ineligible for any ANFC payments, even if the unemployment payment is less than the ANFC payment which the family otherwise would have received. Vermont must operate its ANFC program in this manner in order for the ANFC–UF ("Aid to Needy Families with Children —Unemployed Father") segment of the program to receive federal financial assistance under the federal "Aid to Families with Dependent Children" (AFDC) program.[2]

The named plaintiffs, Glodgett, Percy and Derosia, are the parents and minor children of Vermont families who were denied ANFC assistance because of the receipt of unemployment compensation by the father in each of these families. On December 17, 1971, the Glodgett

---

1. Vermont Welfare Regulation 2333.1 provides in part:

   "An 'unemployed father' is one whose minor children are in need because he is out of work, is working part time, or is not at work due to an industrial dispute (strike), for at least 30 days prior to receiving assistance, provided that:

   .　.　.　.　.

   3. He is not receiving Unemployment Compensation during the same *week* as assistance is granted."

2. Although each state may refuse to participate in the federal welfare program, once a state decides to participate it must maintain a system consistent with the Social Security Act. See Townsend v. Swank, 404 U.S. 282, 285, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); Rosado v. Wyman, 397 U.S. 397, 419–420, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 316–317, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). If a state elects to provide ANFC benefits to families with unemployed fathers (ANFC–UF), 42 U.S.C. § 607(b)(2)(C)(ii) requires that the state plan must deny benefits under § 607 during any week in which the father receives unemployment compensation. See text, infra.

family's application for ANFC was accepted and they were allotted a monthly benefit of $239.00. On January 12, two days after Mr. Glodgett began receiving unemployment compensation from New Hampshire of $14.00 per week, he was notified by the state that his ANFC payments would be terminated as of February 16, 1972, by reason of his receiving unemployment compensation. The ANFC grant was reinstated soon after Mr. Glodgett ceased receiving unemployment benefits in March.

When Roger Percy's employment as a trucker was suspended, he began receiving unemployment benefits of $172.00 per month. Because of his receipt of unemployment compensation, his family was denied ANFC payments which would have totalled $410.00 per month, had the family not been disqualified.

On October 25, 1972, the Derosia family qualified for ANFC assistance in the amount of $394.00 per month. On November 6 Mrs. Derosia notified Social Welfare that the family was receiving unemployment compensation of $56.00 per month. For this reason the Derosias' ANFC grant was terminated as of December 1, 1972.

The plaintiffs seek injunctive and compensatory remedies on their own behalf and also on behalf of the class they claim to represent. More particularly, they seek the following relief: permission to maintain this action as a class action; a declaration that 42 U.S.C. § 607(b)(2)(C)(ii) and Vermont Welfare Regulation 2333.1 are unconstitutional because they respectively violate the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment. They seek an order enjoining the enforcement of the statute and regulation against the plaintiff class and compensatory ANFC benefits paid retroactively to the plaintiffs

and class in the same amount that they would have been paid under 42 U.S.C. § 606,[3] or as if the mother, instead of the father, had been receiving unemployment compensation.[4] They further request an order directing the Secretary of HEW to approve the Vermont ANFC–UF program without requiring the inclusion of a provision disqualifying families with fathers receiving unemployment compensation; and such further relief as the court deems appropriate. At oral argument the plaintiffs advanced an additional statutory claim, contending that Vermont Welfare Regulation 2333.1 is enforced inconsistently with 42 U.S.C. § 607(b)(2)(C)(ii).

A three-judge court was convened, as required by 28 U.S.C. §§ 2281, 2282, since injunctive relief is sought against state and federal enactments on constitutional grounds. The defendant Betit at the time the action was commenced was Commissioner of Social Welfare for the State of Vermont. The defendant Richardson was then Secretary of the Department of Health, Education and Welfare. All parties have moved for summary judgment. Both defendants have moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

### Class Action Status

The named plaintiffs contend they are representative of a class of Vermont families deprived of ANFC because the father receives unemployment compensation. In their complaint they request certification of this suit as a class action.

██ While the defendants do not contest the class action status of this suit, before the action may so proceed the court is called upon to determine whether the action is maintainable as a

---

3. Section 606, through the definition of "dependent child", authorizes payments to families in which a child has been deprived of parental support by reason of the death, absence or incapacity of a parent. See text, infra.

4. Section 607(b)(2)(C)(ii) provides for the disqualification from ANFC–UF benefits of families in which the father receives unemployment payments, but does not disqualify families in which the mother receives unemployment benefits. See text, infra.

class suit. Fed.R.Civ.P. Rule 23(c)(1);[5] Jackson v. Cutter Laboratories, 338 F.Supp. 882, 886 (E.D.Tenn.1970). An action is not maintainable as a class action merely because it is so designated in the pleadings. Cash v. Swifton Land Corporation, 434 F.2d 569, 571 (6th Cir. 1970); In re Swan-Finch Oil Corporation, 279 F.Supp. 386, 391 (S.D.N.Y. 1967). To the contrary, the plaintiffs in a purported class action bear the burden of establishing that their action meets the prerequisites of Rule 23. Rossin v. Southern Union Gas Company, 472 F.2d 707, 712 (10th Cir. 1973); Poindexter v. Teubert, 462 F.2d 1096, 1097 (4th Cir. 1972); Daye v. Commonwealth of Pennsylvania, 344 F.Supp. 1337, 1342 (E.D.Pa.1972); Clark v. Thompson, 206 F.Supp. 539, 542 (S.D. Miss.1962), aff'd 313 F.2d 637 (5th Cir. 1963), cert. denied, 375 U.S. 951, 84 S. Ct. 440, 11 L.Ed.2d 312 (1963); Free World Foreign Cars, Inc. v. Alfa Romeo, 55 F.R.D. 26, 29 (S.D.N.Y.1972); see Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); Phillips v. Sherman, 197 F. Supp. 866, 869 (N.D.N.Y.1961). This burden imposes upon the plaintiffs in a purported class action the responsibility to move for formal certification of their class action by the court under Rule 23(c)(1). Herbst v. Able, 45 F.R.D. 451, 453 (S.D.N.Y.1968); Zeigler v. Gibralter Life Insurance Company, 43 F. R.D. 169, 170 (D.S.D.1967).

In this case, beyond their request for certification in their complaint, the plaintiffs have not sought a formal determination of class action status. Thus the vital issues concerning the adequacy of representation which underly any representative action remain unattended and unresolved. The question of adequacy of representation, see Hansberry v. Lee, 311 U.S. 32, 41–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Herbst v. Able, supra at 453 of 45 F.R.D., has not been answered. Nor have important issues concerning notice: whether notice is re-

quired not only if the damages aspect of the action is to be maintained, see Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1015 (2d Cir. 1973), but also if injunctive relief is sought on behalf of the class under Rule 23(b)(2), compare Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564–565 (2d Cir. 1968); Schrader v. Selective Service System Local Board No. 76 of Wisconsin, 470 F.2d 73, 75 (7th Cir. 1972); Zachary v. Chase Manhattan Bank, 52 F.R.D. 532, 535 (S.D. N.Y.1971), with Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir. 1971); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir. 1969); Woodward v. Rogers, 344 F.Supp. 974, 980 n. 10 (D.D.C.1972); Vaughns v. Board of Education of Prince George's County, 355 F.Supp. 1034, 1035 (D.Md. 1972); Northern Natural Gas Co. v. Grounds, 292 F.Supp. 619, 636 (D.Kan. 1968); 3B Moore, Federal Practice, ¶ 23.72, pp. 1421–1422 (1969). And if prejudgment notice is required here, the mechanics involved, such as the form the notice should take, have not been dealt with by the parties. Compare Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1015 (2d Cir. 1973), with e. g., Lopez v. Wyman, 329 F.Supp. 483, 486 (W.D.N. Y.1971); Snyder v. Board of Trustees of the University of Illinois, 286 F.Supp. 927 (N.D.Ill.1968).

Despite the fact that these issues have not been attended to, the plaintiffs have pressed their motion for summary judgment. Without a determination of these issues, a representative action which seeks to affect the rights of absent parties may not proceed. See Hansberry v. Lee, supra; Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In moving for summary judgment without having sought a formal certification of this action as a class action, the plaintiffs leave us no choice but to dismiss the class aspects of this suit, on the ground that the plaintiffs

---

5. Rule 23(c)(1) provides:
  (1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.

have failed to meet their burden to prove that the action meets the prerequisites of Rule 23.

### Jurisdiction

Section 1343(3) of Title 28, United States Code, affords jurisdiction over plaintiffs' claims against both the state and the federal defendants Aguayo v. Richardson, 473 F.2d 1090, 1102 (2d Cir. 1973); *cf.* Macias v. Finch, 324 F.Supp. 1252 (N.D.Calif. 1970), (3–Judge Court), aff'd sub nom, Macias v. Richardson, 400 U.S. 913, 91 S.Ct. 180, 27 L.Ed.2d 153 (1970); Conner v. Finch, 314 D.Supp. 364 (N.D.Ill. 1970), (3–Judge Court), aff'd sub nom, Conner v. Richardson, 400 U.S. 1003, 91 S.Ct. 575, 27 L.Ed.2d 618 (1971); but see Stinson v. Finch, 317 F.Supp. 581 (D.Ga.1970), (3–Judge Court). Section 1343(3) provides original jurisdiction in the United States District Court of actions seeking redress for deprivations of constitutional rights occurring under color of state law or regulation.[6]

The plaintiffs have been denied ANFC–UF benefits, arguably in violation of their constitutional rights, under color of Vermont Welfare Regulation 2333.1. There is plainly subject matter jurisdiction over this suit under 28 U.S.C. § 1343(3), albeit that there is no specific assertion of jurisdiction on this statute.

As defendant Betit is responsible for enforcing the state regulation in question, he is responsible in part for the denial of benefits to the plaintiffs, so there is jurisdiction over the claim against him. There is also jurisdiction over the claim against the Secretary of HEW, since his enforcement of 42 U.S.C. § 607(b)(2)(C)(ii) requires the defendant Betit to deny ANFC benefits to the plaintiffs. Thus he is partially responsible for the deprivation of which all the plaintiffs complain.[7]

---

6. 28 U.S.C. § 1343(3) provides:
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   . . . . .

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

7. All that section 1343(3) requires for the exercise of jurisdiction is an alleged deprivation of Constitutional rights effected under color of state law or regulation. Given such a state action, which concededly occurred here, it is necessary to join as party defendants all persons responsible for that action. While the *Stinson* court felt that a Secretary of HEW could not properly be joined, because of his administration of a federal matching grant statute, as a party defendant to a civil rights action challenging the state statutory program receiving the matching funds, we do not agree.

   First, the *Stinson* court took the view that 28 U.S.C. § 1391(e) barred the exercise of personal jurisdiction over the Secretary by the court in the district where the claim arose, if a non-federal party were joined as a party defendant. The law in this circuit is to the contrary. Liberation News Service v. Eastland, 426 F.2d 1379, 1382 n. 5 (2d Cir. 1970).

   Second, it is highly unrealistic to suppose that the threat by a federal official of a denial to a state of federal ANFC–UF matching funds, in retaliation for a refusal by the state to operate its ANFC–UF program in a certain way, does not make that official partially responsible for the manner in which the program is operated. The *Stinson* court's denial of this responsibility would sanction a federal statute which, arguably, authorizes the states to violate the Equal Protection Clause, contrary to the express prohibition against such Congressional action in Shapiro v. Thompson, 394 U.S. 618, 641, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

   To the extent there is any doubt about the propriety of extending 1343(3) jurisdiction over the claim against the federal defendant here, the doubt should be resolved in favor of jurisdiction, to avoid the anomaly of denial of federal jurisdiction over a suit against a federal officer challenging the constitutionality of a federal statute involving social welfare, an area in which the federal courts have particular expertise. See Friendly, Federal Jurisdiction: a General View 69–70, 121–122; Wright, Law of Federal Courts 110; Aguayo v. Richardson, 473 F.2d 1090, 1102 (2d Cir. 1973).

■ The failure of the plaintiffs to plead section 1343(3) as a basis for the court's authority over the claim against the Secretary is not a serious jurisdictional defect. While it is the duty of the court to take note of any defects of jurisdiction so that the mandate of the statutes which limit jurisdiction will be observed, Arnold v. Troccoli, 344 F.2d 842 (2d Cir. 1965), a statute conferring federal jurisdiction need not be specifically pleaded if facts giving the court jurisdiction are set forth in the complaint. New York State Waterways Association, Inc. v. Diamond, 469 F.2d 419, 421 (2d Cir. 1971); Eidschun v. Pierce, 335 F.Supp. 603, 615 (D.Iowa 1971); see also Phillips v. Rockefeller, 321 F.Supp. 516 (S.D.N.Y.1970), aff'd, 435 F.2d 976 (2d Cir. 1970). The motions of the defendants to dismiss for want of jurisdiction of the subject matter of this controversy must be denied.

### The Statutory Scheme

Title IV (42 U.S.C. § 601 et seq.) of the Social Security Act provides for a cooperative federal-state program to assist needy families with children. States are not required to establish such programs. If they do, they must submit their plan to the Secretary for approval. Every state has established such a program.[8] If the plan submitted meets the requirements of 42 U.S.C. § 602(a) and contains none of the conditions prohibited in § 602(b), then the Secretary "must approve" it. Upon approval, the state becomes entitled to receive substantial federal · funding for payments made in accordance with the plan and applicable federal conditions. Vermont's plan has been approved by the Secretary.

As originally established by the Social Security Act of 1935, the program for aid to dependent children did not provide for the needs of children caused by the unemployment of a parent. King v.

Smith, 392 U.S. 309, 327–330, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In 1961 the Act was amended to allow states the option of extending coverage to children who were needy because of the unemployment of a breadwinning parent. The 1961 amendment provided that a state could, if it chose to do so, deny all or any part of an AFDC stipend to a family during any month in which the supporting parent received unemployment compensation.

In 1968 the section of the act relating to ANFC–UF was amended to include the provisions challenged here. Benefits became available to a family whose need was occasioned by the unemployment of a father, under standards prescribed by the Secretary; formerly, benefits accrued to a family whose need was caused by the unemployment of a parent, as defined by the state. The 1968 amendment also mandated denial of benefits to a family during any week in which the father received unemployment compensation. Formerly the Act allowed the state the option of enforcing a complete or partial denial of benefits, or a full stipend without reduction, for any month during which the parent received unemployment compensation.

Section 606(a), by definition of "dependent child," provides for assistance to families who are needy because of deprivation of parental support or care by reason of the death, continued absence or physical or mental incapacity of a parent. Section 607 enlarges this coverage to authorize benefits to children who are needy as a result of the unemployment of the father.

Section 607(b) makes this extended coverage applicable "to a State if the State's plan, approved under Section 602 of this title—

(2) provides—

(C) for the denial of aid to families with dependent children to any

---

8. Dandridge v. Williams, 397 U.S. 471, 472–473, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). For a general picture of AFDC as established by the Social Security Act, see King

v. Smith, 392 U.S. 309 (1968); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L. Ed.2d 442 (1970); Dandridge v. Williams, supra.

child or relation specified in subsection (a) of this section—(i) if, and for so long as, such child's father is not currently registered with the public employment office in the State, and

(ii) with respect to any week for which the child's father receives unemployment compensation under an unemployment compensation law of a State or of the United States."

Vermont has elected to extend its ANFC program to include those who have been deprived of parental support or care by reason of the unemployment of the father under 42 U.S.C. § 607. In response to the requirements of that section, it has promulgated Welfare Regulation 2333.1. This regulation renders the family of an unemployed father eligible for ANFC–UF benefits if the father "is not receiving Unemployment Compensation during the same *week* as assistance is granted." (Emphasis in original text.)

This is in contrast to the treatment afforded ANFC families who receive income in a form other than unemployment compensation received by the father. The receipt of such income does not render the family ineligible for ANFC; the amount of the receipt is simply deducted from the ANFC payment which the family would normally receive.[9]

### The Statutory Claim

The plaintiffs rely on the language of § 607 to assert the claim that an unemployed father can avoid disqualification from ANFC–UF benefits by refusing to accept unemployment compensation. In this they rightfully maintain that a family eligible for ANFC benefits under section 607 can be excluded only for each week in which unemployment compensation is actually received by the father. It is clear from the language of the statute that the disqualifying factor is actual payment, rather than mere eligibility for unemployment compensation. And in this construction the defendants concur. We find nothing in the legislative history of the enactment at variance with this construction.

Since actual payment of unemployment compensation is the controlling factor, rather than eligibility for such payment, the statute affords the unemployed father an option. There is no compulsion that he accept unemployment compensation. He may accept such payment and forego ANFC–UF benefits for

---

9. Under the Vermont plan, approved by the Secretary of HEW as consistent with the requirements of the Social Security Act, receipt of income does not render a family per se ineligible for ANFC. If the amounts received are insufficient to bring the family's income above the state-determined standard of need, those amounts are simply subtracted from the amount of the grant to which the family is entitled. Under Vermont Welfare Regulation 2601, the "Vermont ANFC payment level" is defined as the sum of the ANFC basic needs standard and shelter expense, minus "the budgeted income of the applicant and his legal dependents." "Budgeted income" is defined as "gross monthly income received from any source by the applicant and his legal dependents without income exclusions for any purpose." *Id.* "Unearned income" is explicitly defined to include "income from pension and benefit programs, such as Social Security, Railroad Retirement, veteran's pension or compensation, Unemployment Compensation, employer or individual private pension plans and/or annuities, etc." Vermont Welfare Regulation 2253.

For example, suppose a family is in need because of the father's illness and the father receives a veteran's pension. The family is not disqualified from receiving ANFC. If it is eligible for ANFC, it receives an ANFC payment equal to the state standard of need reduced by the amount of the veteran's benefit.

We use the term "state standard of need" to mean the amount of money that a family qualifying for ANFC is entitled to receive. The standard varies according to the number of persons in the group eligible for assistance, the number of persons in the household where the group resides, the place of residence of the group, and the form of housing involved, and includes funds to allow the recipient group to purchase the necessities of life: food, clothing, fuel, utilities, housing, etc. Vermont Welfare Regulation 2211.1–2211.2.

himself and his family, or he may accept the benefits afforded by the ANFC–UF program at the cost of surrendering unemployment compensation. The option is to receive (a) ANFC without unemployment compensation, or (b) unemployment compensation without ANFC. We construe this option to operate as follows: If a father otherwise eligible for ANFC–UF receives unemployment benefits which are less than the ANFC payment for which he qualifies, he can reject the unemployment check in favor of the ANFC payment, thereby receiving an income consistent with the state standard of need. If, on the other hand, he receives an unemployment check which is larger than his ANFC stipend would be, he can accept it, and thereby forego his right to ANFC for that week. In either event, the option available to him will provide total income equal to or greater than the state standard of need.

■ This result provides the same relief the plaintiffs seek to achieve by way of their constitutional claims. In those claims the plaintiffs seek a judicial determination that families of unemployed fathers applying for AFDC should receive the same treatment as families in need for other reasons, who qualify for AFDC under § 606. Their concern is that families of unemployed fathers, like other families applying for AFDC, should be assured of receiving an income equal to the state standard of need, irrespective of their eligibility to receive outside income. The option afforded by our construction of 42 U.S.C. § 607(b)(2)(C)(ii) provides this protection. Since our construction of this statute resolves this case, we are precluded from reaching the plaintiffs' constitutional claims. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936), (Brandeis, J., concurring).

It is not clear from the information before the court the extent to which the plaintiffs have been damaged financially by the failure of the Vermont Department of Social Welfare to afford them a choice between unemployment compensation and ANFC–UF. It appears from oral argument and from the stipulated facts filed by the parties that, to an extent which has not been made precisely clear, the State of Vermont supplemented the plaintiffs' unemployment compensation checks with funds from General Assistance, thereby reducing the actual loss each plaintiff suffered when his family was disqualified from ANFC–UF. If the plaintiffs are able to make a showing that they have suffered pecuniary loss as a result of this disqualification, we consider it a proper exercise of our equitable powers to afford the plaintiffs the option of re-tendering their unemployment compensation benefits and receiving ANFC benefits in lieu thereof for the relevant weeks in which the receipt of unemployment compensation has adversely affected the financial interest of the family concerned.

The parties are directed to prepare a proposed decree for approval by the court in accordance with the views expressed in this opinion.

SUPPLEMENTAL OPINION AND ORDER

PER CURIAM.

Plaintiffs have filed a motion for rehearing on dismissal of the class action. Defendant Philbrook has filed a motion for a new trial.

Since the motion for a new trial presents nothing for consideration that was not presented to the court originally and is in essence a petition for rehearing, it is hereby denied.

■ While the motion for rehearing on dismissal of the class action may present viable matter, since the original decision of the court and motion here filed, the United States Court of Appeals for the Second Circuit has held in Galvan v. Levine, 490 F.2d 1255, 1260 (2d Cir. 1973), that where the relief sought as to the class, as here, is prohibitory only, that is, seeks only declaratory or injunctive relief, and class action designation is therefore largely

a formality, what is important is that the *"judgment* run to the benefit not only of the named plaintiffs but of all others similarly situated . . . ." *Id.* at 1261. We would assume that the State here would have understood the judgment to bind it in the future with respect to all claimants, in any event. Lest there be any mistake, however, in submitting a decree for our signature pursuant to the final paragraph of the opinion dated October 17, 1973, appropriate language to insure that the decree runs for the benefit of all others similarly situated in the future is hereby directed to be included. To the extent that plaintiffs' motion seeks to have retroactive reimbursement for unnamed parties, members of plaintiffs' class, in line with the actual relief given to the named plaintiffs and intervenors, class action designation is hereby refused, such a class action being unmanageable, notice being impracticable, and defendant being put to unwarranted inequitable administrative difficulty thereby.