Sylvester J. VAUGHNS, Jr., et al.

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY et al.**

Civ. No. 72-325.

United States District Court, D. Maryland.

July 25, 1972.

Richard V. Falcon, David S. Bogen, Kenneth L. Johnson, Gerald A. Smith, Baltimore, Md., and Alan J. Goldstein, Oxon Hill, Md., for plaintiffs.

Paul M. Nussbaum and Stanley H. Goldstein, Mt. Rainier, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

■ Plaintiffs, black adult residents of Prince George's County, Maryland, instituted this proceeding on behalf of their school age children and other children similarly situated, invoking this Court's jurisdiction, *inter alia*, under 28 U.S.C. § 1343, the jurisdictional counterpart of 42 U.S.C. § 1983. Plaintiffs' substantive claim for injunctive and declaratory relief is stated under that latter statute and rests upon alleged violations of the standards established by the Supreme Court of the United States in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown I*) and Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) (*Swann*). Plaintiffs ask this Court to permit this case to be brought as a class action under Federal Civil Rule 23. Since this action falls precisely within the provisions of Federal Civil Rule 23(b)(2), this Court hereby determines that this action shall be maintained as a class action on behalf of all black children of school age residing within Prince George's County.[1]

Plaintiffs seek summary judgment herein and point in connection therewith to an extensive and detailed Joint Stipulation of Facts filed by both sides and attached hereto. While that document speaks for itself, a few highlights culled therefrom are revealing.

Until 1954, Prince George's County (the County) maintained a dual school system, segregated by state law. *See* Md.Ann.Code art. 77, §§ 124, 207–09, 269 (1951 ed.). At the conclusion of the 1953–54 school year, the County operated a total of 95 elementary and secondary schools of which 21 were attended only by black students.

After the Supreme Court of the United States declared such state-imposed racial segregation in education unconstitutional in *Brown I*, the County adopted, in 1956, a "freedom of choice" plan. Under that plan each pupil was assigned to the school he attended before the Supreme Court's decision in *Brown I* but each pupil was given the option of electing to transfer to the school nearest to where he lived or, in certain exceptional cases, to any other school. The effect in practice of that "freedom of choice" plan was to maintain intact the racially segregated school system which had existed theretofore. During the 1964–65 school year, the last year in which the "freedom of choice" plan was in operation, over 82% of the County's black student population attended schools which were 100% black and over 73% of the white students attended schools which were over 95% white. Fifteen of the County's 126 elementary schools en-

1. Because the class is designated pursuant to Rule 23(b)(2), no notice is required by Rule 23(c)(2). For a discussion of notice requirements in class suits pursuant to Federal Rule 23, *see*, on the one hand, Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969); Francis v. Davidson, 340 F.Supp. 351 (D.Md.1972); Northern Natural Gas v. Grounds, 292 F.Supp. 619, 636 (D.Kan. 1968), as contrasted with Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2d Cir. 1968). See also 3B J. Moore, Federal Practice ¶ 2355 at 1152–53 (2d ed. 1969), favoring the views expressed in the first three cases that notice in a Rule 23(b)(2) case is not always required.

rolled an all-black student body and three of its secondary schools, attended by 77.4% of the black pupils who were of secondary school age, remained all black schools.

Beginning with the 1965–66 school year, the County adopted a pupil assignment system based upon geographic attendance zones established by its Board of Education. Under that system, a pupil attends the school located in the zone in which he lives. The geographic attendance zone plan has continued in force and effect up to and including the present time although the boundaries of most if not all of the zones have been changed from time to time.

At the end of the first year in which the geographic attendance zone system was in effect, 11 schools (6.1%) in the County had student body population of 95% or more black pupils while 113 schools (62.8%) had student bodies in excess of 95% white pupils. In October 1967, a report submitted to the federal Department of Health, Education and Welfare by the Superintendent of Schools for Prince George's County disclosed that, at that time, eight of the County's 199 schools enrolled an all-black student body.

At the present time, the Prince George's County school system has a total enrollment of 162,828 pupils of which 22.4% are black and 77.6% are white. Sixty-one percent of the black pupils attend schools with student bodies greater than 50% black and 40% of the black pupils attend schools which are greater than 80% black. Forty-seven percent of the white students attend schools which are greater than 95% white and 66% attend schools which are greater than 90% white.

▉ Against the agreed factual background in this case, defendants oppose plaintiffs' motion for summary judgment, asserting that the undisputed facts constitute "mere conclusions" and that a factual dispute concerning "cau-sation" exists. But that dispute, to the extent it exists herein, is relevant not as to whether relief should be granted but rather as to what type of relief is required.

That conclusion is compelled by the command of *Brown I* and the implementation required by *Brown II*,[2] as well as by the doctrine of Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), which Mr. Chief Justice Burger summarized in *Swann* (at 13 of 402 U.S., at 1275 of 91 S.Ct.) as standing for the proposition that although "a freedom-of-choice concept could be a valid remedial measure in some circumstances, its failure to be effective in Green required that:

'The burden on a school board today is to come forward with a plan that promises realistically to work . . . *now* . . . until it is clear that state-imposed segregation has been completely removed.' Green, supra, at 439 [of 391 U.S.], 88 S.Ct. 1694 . . . .' [Emphasis in original.]

Continuing in *Swann* (at 14, at 1275 of 91 S.Ct.) the Chief Justice wrote:

This was plain language, yet the 1969 Term of Court brought fresh evidence of the dilatory tactics of many school authorities. Alexander v. Holmes County Board of Education, 396 U.S. 19, [90 S.Ct. 29, 24 L.Ed.2d 19], restated the basic obligation asserted in Griffin v. School Board, 377 U.S. 218; [84 S.Ct. 1226, 12 L.Ed.2d 256] (1964), and Green, supra, that the remedy must be implemented *forthwith*. [Emphasis by the Chief Justice.]

Later, in *Swann* (at 31, at 1283 of 91 S.Ct.), the Chief Justice returned to *Green* noting that in that case the Supreme Court "used the term 'feasible' and by implication, 'workable,' 'effective,' and 'realistic' in the mandate to develop 'a plan that promises realistically to work, and . . . to work *now*.' "

2. Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955).

Those standards command a discontinuation of the current lack of desegregation in the schools of Prince George's County. That lack stems from a pre-*Brown I* segregated system which has never been effectively dismantled and which was not, in its origin, "a consequence of other types of state action, without any discriminatory action by the school authorities" (*Swann* at 23 of 402 U.S., at 1279 of 91 S.Ct.). At the same time, this Court recognizes that the increased and continuing movement of blacks in recent years from the District of Columbia into Prince George's County has produced a growing and changing societal pattern in the latter jurisdiction.

■ Both sides in this case have advised this Court that the Board of Education of Prince George's County (Board) entered into a contract dated June 30, 1972, utilizing funds made available to the Board by the federal Department of Health, Education and Welfare, with the Lambda Corporation, a corporation with its principal office in Arlington, Virginia (Lambda), to make a study and a presentation to the Board with the objective "to assist Prince George's County in the development of a desegregation plan in which specified desegregation objectives are met with a minimum of student transportation." The commencement date for the study was the latter part of the month of June, 1972. The agreed standards underlying the development by Lambda of its plan are:

a. Students shall be assigned so that the level of desegregation reached in the basic desegregation option presented by the Lambda Corporation to the Prince George's County School Board on May 2, 1972 is achieved; and so that no school will have a majority of black students.

b. For the 1972–73 school year there will be no net increase over the average number of children bused in the 1971–1972 school year corrected for the normal increase the Board will expect for the 1972–1973 school year.

In addition, the contract also stated that "an early plan for the secondary schools [is] to be delivered" to the Board "so that it could be converted into a detailed plan for implementation by the Fall of 1972."

This Court is presently informed that certain difficulties have arisen in connection with the conduct of the study which have caused delays. In that connection, Lambda has currently advised this Court and the Board that it is doubtful whether Lambda will be able to submit to the Board a plan for the secondary schools of the County in time for implementation by September 5, 1972, the date the County schools are scheduled to open in the fall of this year.

However, Lambda has also advised this Court and the Board that Lambda will submit to the Board not later than August 22, 1972 a status report concerning Lambda's work under its aforesaid contract with the Board. Accordingly, the Board is hereby Ordered to file in this Court 10:00 a. m. on August 22, 1972 the said status report it receives from Lambda on that date, along with, to the fullest extent practical in view of the requirements of the Order set forth in the immediately following paragraph hereof, the Board's own plan for student attendance, faculty [3] and administration (the preparation of which plan the Board is hereby Ordered forthwith to commence and pursue diligently so as to bring the Prince George's County school system into total compliance with the *Brown-Swann* standards to the fullest extent possible by September 5, 1972, or if that is not feasibly possible, then to bring that system into such compliance in part to the fullest extent possible by that date. The burden of establishing the need for any delay or delays in

---

3. This Court has been informed by counsel for both sides that such a plan as to faculty is already in existence.

whole or in part shall rest upon defendants.

On a primary basis the Board is hereby further Ordered forthwith to cooperate fully and effectively with Lambda and to furnish the latter as quickly as possible without any delay all relevant data and information which Lambda requires for its study and for the formulation of its plan.

This Court will hold a hearing on August 25, 1972, at 10:00 a. m. to consider the reports due on August 22, 1972 as well as any further evidence either side desires to produce. Thereafter, this Court will file one or more further Orders designed to achieve at the earliest possible date or dates compliance by defendants with the standards of *Brown I* as enunciated in *Swann*.