**Sylvester J. VAUGHNS, Jr., et al.**

**v.**

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY et al.**

**Civ. No. 72-325.**

United States District Court,
D. Maryland.

Aug. 31, 1972.

Richard V. Falcon, David S. Bogen, Kenneth L. Johnson, Gerald A. Smith, Baltimore, Md., and Alan J. Goldstein, Oxon Hill, Md., for plaintiffs.

Paul M. Nussbaum and Stanley H. Goldstein, Mt. Rainier, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

■ On July 25, 1972, 355 F.Supp. 1034, this Court filed an opinion in this case ordering desegregation within the tenth largest public school system in the United States and an end to lack of compliance with the constitutional standards enunciated by the Supreme Court in the *Brown* and *Swann* cases.[1] Pursuant thereto the Board of Education of Prince George's County (the Board) filed a report on August 22, 1972, and lengthy hearings were held commencing Friday, August 25, 1972, and terminating earlier today. The report and the record in this case demonstrates that since August 1, 1972 the school staff, in accordance with the Board's resolution of that date, has complied in good faith with this Court's July 25, 1972 Order and indeed has burned midnight oil in connection therewith. The August 22, 1972 report includes a proposed staff plan for desegregating, effective September 5, 1972, the senior high schools but excluding, for the school year 1972–73 only, the twelfth grade, i. e., the senior class. Plaintiffs have no objection to that one-year exclusion and urge this Court to order the plan to become effective September 5, 1972 with regard to the tenth and eleventh grades for the school year 1972–73. Defendants, on the other hand, urge this Court not to order the implementation of any desegregation plan for any grade until the opening of the school year 1973–74 in September, 1973. On a secondary basis, defendants would have this Court order elementary school desegregation effective January 29, 1973, the date on which the second semester of the upcoming school year will commence, and delay implementation with regard to junior high and senior high schools until the fall of 1973.

Defendants also contend that even if the junior high implementation is moved up to January 29, 1973, the senior high change should not become effective until the autumn of 1973. Defendants concede that under this Court's July 25, 1972 Order all grades should be desegregated no later than the opening of the school year, 1973–74.

On the other hand, plaintiffs ask this Court, as indicated above, to implement the proposed staff plan effective September 5, 1972 as to the tenth and eleventh grades, and also contend that this Court should require a new desegregation plan to go into effect on January 29, 1973 with regard to the elementary and junior high schools and in September, 1973 with regard to the twelfth grade. As is apparent, the only agreement between the parties as to dates of implementation of the required desegregation changes is that plaintiffs, like defendants, desire that any change with regard to the twelfth grade be delayed until the fall of 1973. However, there is also agreement among the parties that the proposed staff plan for the senior high school is educationally sound.

That staff senior high plan was prepared during this month independently of the work being simultaneously done by The Lambda Corporation (Lambda). Testimony in this case would indicate, however, that the proposed tenth and eleventh grade plan could in all probability be coordinated with the Lambda proposals, when they are forthcoming, without any substantial additional expense, complication or delay. However, all of the testimony reveals that the staff plan cannot be implemented without delaying the opening of the tenth and eleventh, and also the twelfth, grades [2] for a period of at least two weeks. Indeed, except for one senior high school principal,

---

1. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

2. The senior high class programs involve so much coordination and integration among the three grades (10th, 11th and 12) which compose it that it is apparently not possible to treat the twelfth grade in any given school separately from the tenth and eleventh grades in such school.

called to testify by plaintiffs, all of the witnesses indicated the delay would be approximately one month in length.[3]

The superintendent of the schools and other witnesses testified that implementation of any desegregation plan without opportunity for planning and exchange of information among teachers, counselors, students and parents, would cause chaos and would lead to increased racial tensions. However, there was also testimony from the above-mentioned senior high school principal and from a Board member that such tensions are already at a high level and that they would be reduced if the desegregation plan for the tenth and eleventh grades went into effect this fall. On balance, this Court is convinced that, at this late date, it is not possible to implement the staff plan for the tenth and eleventh grades without delaying the opening of seventeen of the eighteen senior high schools for a period of approximately one month and without bringing about great confusion in the operation of the school system and adding to the tensions which already exist.

The connection between those existing tensions and the failure earlier by the Board to comply with the *Brown-Swann* mandates may not be overlooked. Further, the Board was most specifically advised by officials of the federal Department of Health, Education and Welfare (HEW) in the summer of 1971 that the Board was not in compliance with those mandates. Indeed, since August, 1971, the Prince George's County school system has not been eligible to receive certain new federal funds because of such noncompliance. Additionally, there was delay in mid-July, 1972 with regard to lack of cooperation by the Board with

Lambda. Against that background, it is most regrettable that there should be any further delay. But what must govern the determination in this case are the facts which exist today and not the facts which might have existed had the School Board acted to bring itself into compliance with the *Brown-Swann* standards without this Court's Order, or had the School Board otherwise moved to correct the constitutional violations which have existed.

The Board bears a heavy burden to show the need for any delay [4] beyond September 5, 1972 in implementing the staff plan as to the tenth and eleventh grades.[5] But defendants have successfully shouldered that burden despite the delays which occurred prior to August of this year. The staff plan can only become effective in September, 1972 if seventeen of the eighteen senior high schools remain closed for a period which this Court believes will be approximately one month. The extreme undesirability of such a late opening needs little elaboration, though it bears specific mention that opening one month late would shorten the 1972–73 school year, and make it very difficult, if not impossible, for that year to include the necessary number of school days required by Maryland law and at the same time conclude within the June expiration date set forth in teachers' contracts.

A vice-president of Lambda, in charge of preparing the Lambda plan, testified that his work will not be completed, at the earliest, before November, 1972. However, he also testified that the proposed staff plan for the tenth and eleventh grades could, if made effective September 5, 1972, later be coordinated with the Lambda plan without any undue expense or complication. Thus, the

---

3. The proposed senior high school plan alters the numbers of students attending seventeen out of eighteen high schools and requires reassigning some teachers from one school to another, consultations among administration, faculty, counselors, students and parents and many other steps which have yet to be fully programmed and which must be implemented

when programmed. That will take time —how much can only be estimated.

4. Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969).

5. Carter v. West Feliciana Parish School Board, 396 U.S. 226, 90 S.Ct. 467, 24 L.Ed.2d 382 (1969).

fact that the Lambda plan is not yet ready does not for that reason justify delay in implementation of the staff's senior high plan.

During the hearing, more evidence was taken with regard to transportation costs than any other single item. That evidence convinces this Court that if the proposed tenth and eleventh grade plans were made effective on September 5, 1972, and all other desegregation was delayed until September, 1973, there might well be an additional cost exceeding three-quarters of a million dollars. That cost could probably be reduced to less than half of that amount if all desegregation other than of the twelfth grade were accomplished effective January 29, 1973. The tremendous additional cost would occur because Prince George's County at present busses about 75,000 school children, using 496 buses [6] which are scheduled to arrive at the schools in time for staggered opening hours from 7:30 a. m. to 9:30 a. m. Almost all of those 496 buses make as many as five consecutive trips each day, carrying as many as five separate groups of children to their respective schools. Under the proposed staff plan, as presently developed, some of the 496 buses will no longer be able to make consecutive runs. Therefore, those buses and their drivers would accordingly be idle during an increased amount of time.

At present, there are 1500 bus trips per day. Under the proposed senior high plan, the 496 buses would make an additional 140 trips per day, would bus about 200 students who are not now being bussed,[7] and add 7.28 miles per day to the bus miles per high school student now being transported.[8] In order to accomplish those additional trips and because of the additional periods of idle-

ness, the drivers of those buses would have to be employed for longer hours. The cost of paying them for those hours plus the cost of driving certain additional miles will cause the above-mentioned ballooning of transportation costs, though all agree that ballooning can be decreased by trial and error, and also when the entire senior high desegregation plan goes into effect covering the twelfth as well as the tenth and eleventh grades. Additionally, both the school staff witnesses and the Lambda official testified that given time for further study the school staff itself, without outside help and without trial and error, would almost surely be able greatly to reduce the additional costs. Going further, and most importantly, the Lambda official stated that he believes that Lambda's proposals, when completed and coordinated with the plans of the school staff, will permit desegregation of the entire school system, including all twelve grades, without additional transportation expense and perhaps at a reduced total transportation cost; and without involving more than a minimum increase in the total number of students transported, in the miles each such student would be transported, and in the daily transportation time such additional transportation would require. While the courts have made it clear that delays in implementing the *Brown-Swann* standards should not be countenanced because of increased costs,[9] those decisions have been rendered in cases in which there was no evidence that, given a short delay, a desegregation plan meeting constitutional standards could be devised and implemented which would totally or at least substantially eliminate increased costs. Further, those decisions were rendered in the context of cases which had been pending for a number of years

---

6. There are a total of 737 buses, 241 of which are used for special educational, athletic, spare and emergency purposes.

7. About 15,000 senior high school students are currently being bussed.

8. That average is now 15 miles per day per senior high school student.

9. *Swann* involved an increase of about $1,000,000 to a yearly school budget of about $66,000,000. And note particularly Brewer v. School Board of City of Norfolk, Virginia, 456 F.2d 943, 947 n. 6 (4th Cir. 1972).

in the courts. The within proceeding was commenced on last March 29th. Because of the cooperation of counsel in stipulating facts and in many other ways, it was possible for this Court to render as early as July 25, 1972 an opinion with regard to lack of constitutionality of the existing system. Regardless of whether or not detailed studies should have been made and detailed plans formulated prior to that time, the school staff had less than one month to formulate and present those plans for the tenth and eleventh grades by August 22, 1972. Further, Lambda is being paid $50,000 by HEW to present analyses and proposals which will not be available until at least November, 1972 and which may well cause changes to be made in the proposed school staff plan for the senior high. Bearing in mind the command of the Supreme Court in *Alexander* [10] and with full knowledge of the record of the past, this Court concludes that, in light of all of the facts and factors discussed above, including the additional transportation costs as only one of such factors, the defendants have borne their burden of showing the desirability of not implementing the staff desegregation plan for the tenth and eleventh grades effective September 5, 1972.

On the other hand, this Court holds that the defendants have not borne such burden with regard to any delay beyond January 29, 1973 in connection with desegregation of the elementary and junior high school grades. While the shift of a large number of students among schools possibly requires concomitant faculty reassignments and may also entail certain curricular and extra-curricular changes, nevertheless, the testimony in this case indicates that even allowing time for consultation by school staff officials with Lambda so as to enable the Lambda analyses and proposals to be utilized, a complete desegregation plan for all three levels, senior high, junior high and elementary, can be completed by early December or by mid-December, 1972 and implemented by the end of January, 1973. That plan would utilize the senior high plan prepared in the last month but would permit time for it to be altered to eliminate, both with and without the aid of Lambda, any substantial increases in bussing costs, the number of students being bussed, and the number of transportation miles per day per student being bussed. Nevertheless, the defendants resist any change in mid-year, for non-transportation reasons. For one thing, they point to the need to acclimatize all concerned to student assignment changes made to achieve desegregation. It is of course true that any time a student moves from one school to another school, whether it be from elementary to junior high school, or from junior high school to senior high school, or from one school to another within any of the three levels, or indeed from one city to another, careful counseling and planning are required. The burden thrown upon school administrators, faculty and counselors is immeasurably greater when massive changes are undertaken within a very large, geographically scattered system. But that awesome burden will be present whenever the change-over occurs, be it mid-year as of January 29, 1973, or in September, 1973. There was testimony that if the shift is made effective in the fall rather than in mid-year, there is time for certain human relations and counseling programs to be handled during the preceding summer. However, a quick look at the case law reveals that in other instances courts have ordered mid-year changes without any apparent serious adverse results. [11] In this case, this Court concludes that the change-over can and should be made effective January 29, 1973 with regard to the elementary and junior high schools.

10. See n. 4, *supra.*

11. Carter v. West Feliciana Parish School Board, *supra;* Nesbit v. Statesville City Board of Education, 418 F.2d 1040 (4th Cir. 1969). *See also* Clark v. Board of Education of Little Rock School District, 449 F.2d 493, 498–499 (8th Cir. 1971).

The question must therefore be asked, why not also require the change-over to become effective for the tenth and eleventh graders as of January 29, 1973? The answer is that there are a number of important differences between senior high schools on the one hand, and junior high schools and elementary schools on the other hand. Although all of the educators testified that no mid-year change is desirable, all agreed that there are many less problems inherent in a mid-year change-over at the elementary level than at the high school level. For one thing, at the senior high level, there are many electives and more semester courses as opposed to year-long courses.[12] For another, the senior high school student engages in a number of athletic and other extra-curricular activities which transcend the mid-year break. And, additionally, there is the intermingling of tenth, eleventh and twelfth graders in courses and other activities which makes it harder to shift in mid-year senior high students than elementary school students. While the junior high school change-over differs only in degree from the senior high school change-over, the evidence in this case fails to disclose at the junior high level problems of the same approximate degree of intensity as are apparent within the senior high context. Accordingly, defendants have not met the burden as to delay in the change-over in the junior high schools, beyond January 29, 1973, even though they have so done with regard to the senior high schools.

The Prince George's County school transportation system affords bussing for students of all ages. Accordingly, the desegregation plans for all three levels, elementary, junior high and senior high, should be coordinated and completed at one time. Such a total proposed overall plan shall be presented to this Court on or before December 4, 1972. That plan shall be based on a schedule calling for the elementary and junior high schools to be desegregated effective January 29, 1973 and the senior high schools to be desegregated effective September, 1973.[13] This Court will hold a hearing with regard thereto on Monday, December 11, 1972. In connection therewith, this Court notes that since it is not hereby ordering for implementation at this time any action by defendants "which requires the transfer or transportation of any student or students from any school attendance area prescribed by competent State or local authority for the purposes of achieving a balance among students with respect to race, sex, religion, or socioeconomic status" as provided in section 803 of the Higher Education Act Amendments of 1972, Pub.L. 92–318, 86 Stat. 236, this Court is required neither to postpone the effective date of its within Order as provided thereby, nor to construe that section, nor to consider its constitutionality, the latter question having been reserved by counsel for plaintiffs herein. However, those issues would seemingly arise during the December hearing. Counsel are therefore required to submit memoranda in connection therewith no later than October 1, 1972. Thereafter, this Court will hear oral argument during a date set in October pertaining to those issues and any other issues which can be determined prior to the December 11th hearing on the desegregation plan itself.

This case raises questions pertaining not only to assignments of students but also to the racial balances in faculty and administration as well as plans for new school construction. Counsel have agreed to submit reports to this Court

---

12. Semester courses are not uniform either as to schedule or as to content in the several high schools of Prince George's County.

13. In September, 1973, all three grades of the senior high schools, tenth, eleventh *and* twelfth, shall be desegregated. The defendants have agreed that there is not sufficient reason for the senior class to be excluded from operation of the plan if the members of that class and the school administrators and faculty know one year in advance of the change-over and can prepare for the same.

by October 24, 1972 with regard to faculty and administration. Since any new school construction is expected to be coordinated with the new student assignment plan, it is not expected that the construction question will pose any new problems.

The reports and memoranda hereinabove referred to shall be submitted and filed as herein provided. It is so ordered, this 31st day of August, 1972.