Esther HERNANDEZ, Maria Rodriguez, Bienvenida Matias, Deborah Horton, and Margarita Rodriguez, in behalf of themselves and all others similarly situated, Plaintiffs,

v.

Samuel PIERCE, as Secretary of the United States Department of Housing & Urban Development, Anthony Gliedman, as Commissioner of the Department of Housing Preservation and Development of the City of New York, and the Chinatown Planning Council Housing Development Fund Company, Inc., Defendants.

No. 81 Civ. 471.

United States District Court, S. D. New York.

April 29, 1981.

Norman Siegel, MFY Legal Services, Inc., New York City, for plaintiffs; Roger K. Evans, Steve Meyers, New York City, of counsel.

Allen G. Schwartz, Corporation Counsel of the City of New York, New York City, for defendant Gliedman; Karen Shatzkin, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., Southern District of New York, New York City, for defendant Pierce; J. D. Pope, Asst. U. S. Atty., New York City, of counsel.

SOFAER, District Judge:

Plaintiffs are tenants of two city-owned buildings that the City wants to demolish and replace with low-income housing for the elderly and handicapped. Plaintiffs attempted to dissuade local and federal officials from proceeding with the plan; their claims were heard but repeatedly rejected. Now, plaintiffs have brought this suit for declaratory and injunctive relief, alleging that the demolition would violate federal law and their civil rights. They base their action, however, on broad Congressional statements of policy that do not provide private citizens with legally cognizable rights. The action must therefore be dismissed for lack of jurisdiction and for failure to state a cause of action.

In 1965, the New York City Board of Estimate adopted an urban renewal plan, previously approved by the City Planning Commission ("the Commission"), for an area on Manhattan's Lower East Side; the plan was called the Seward Park Extension Urban Renewal Plan. The City proceeded to acquire title to privately owned apartment buildings within the site. It took title to the two buildings in which plaintiffs reside in 1967, but permitted the residents to remain there pending demolition pursuant to the urban renewal plan. Defendant New York City Department of Housing Preservation and Development ("the Department") prepared an Amended Plan for the Seward Park area in July 1979 and submitted it to the Commission in October. The Commission certified the Amended Plan.

At issue here is the Amended Plan's provision for Site 2A, a 156-apartment housing project for low-income elderly and handicapped persons. The sponsor of the project for Site 2A is defendant Chinatown Planning Council Housing Development Fund Co., Inc. ("the Fund"), a nonprofit corporation organized under the New York State Private Housing Finance Law.

The local community board and the Commission held hearings on the Amended Plan. Some parties opposed the demolition of the buildings in which plaintiffs reside; the Department sought to explain why that demolition was necessary. The affidavit of Marvin Wilkinson, the Department's Director of Planning, establishes that the demolition of these two buildings was considered, and approved, at every stage of the local deliberations. Affidavit of Marvin Wilkinson, Feb. 20, 1981. The Commission requested the Department to respond to these tenants' concerns, and officials did so both at a meeting of the Commission and in writing. Charles Reiss, Acting Deputy Commissioner of the Department, sent a letter to the Commission explaining in detail why the Commission had concluded that the two buildings should be demolished. *Id.* Ex. B.

In February 1980, the Commission adopted and submitted to the Board of Estimate a resolution approving the Amended Plan, specifically including demolition of the buildings at issue. The Board of Estimate held a public hearing on the Amended Plan in April 1980; tenants from the buildings at issue opposed the planned demolition. The Board of Estimate adopted one amendment involving a site other than Site 2A, but

otherwise approved the Amended Plan. Demolition of the buildings at issue was provided for in the Amended Plan, both as submitted to, and as approved by, the Board of Estimate.

Pursuant to the agreement between the City and the Fund, the City must convey to the Fund title to the project site after the requisite buildings have been demolished. The Fund expects to obtain financing for the project from defendant United States Department of Housing and Urban Development ("HUD"), in the form of construction loans and rent subsidies.

Plaintiffs, suing on behalf of the tenants of the two buildings, assert jurisdiction based upon 28 U.S.C. § 1331.[1] They allege three causes of action. The first is against HUD; it alleges that, in agreeing to fund the Seward Park project for Site 2A, HUD violated "the policies HUD is required to follow in administering the federal housing programs and funds.... These policies require HUD to preserve and conserve existing housing." Amended Class-Action Complaint ¶ 36 ("Complaint"). The second claim is against the Department; it alleges that the Department violated 42 U.S.C. § 1983 by depriving plaintiffs of rights secured to them by particular federal housing laws. Complaint ¶ 37. The third claim is similar to the second, but bases the purported rights on a different provision of the housing laws. Complaint ¶ 38. No cause of action is asserted against the Fund.

## I. *The Administrative Procedure Act Claim*

Plaintiffs base their claim against HUD upon two alleged agreements between HUD and the Fund: an agreement to provide a loan for land purchases and building construction in Site 2A, pursuant to 12 U.S.C. § 1701q; and an agreement to provide the Fund with rent subsidies, pursuant to 42 U.S.C. § 1437f. Complaint ¶ 23. Plaintiffs allege that these agreements violated statutory policies that "require HUD to preserve and conserve existing housing." The statutes allegedly violated are the Housing and Community Development Act of 1974, § 801, 42 U.S.C. § 1441a(c) ("HCDA § 801"); Housing and Community Development Amendments of 1978, § 902, 42 U.S.C.A. foll. § 5313 (Historical Note) ("HCDA § 902"); and National Neighborhood Policy Act, § 202, 42 U.S.C.A. foll. § 1441 (Historical Note) ("NNPA § 202"). Complaint ¶ 36. This claim must be dismissed because the Administrative Procedure Act ("APA") does not authorize review of these actions.

■ The APA exempts from judicial review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The two statutory provisions pursuant to which HUD has acted are expressly discretionary. With respect to construction loans, "the Secretary *may* make loans ... for the provision of ... housing ... for elderly or handicapped families." 12 U.S.C. § 1701q(a)(2) (emphasis added). With respect to rent subsidies, "the Secretary is *authorized* to make assistance payments" for lower-income housing. 42 U.S.C. § 1437f(b)(2) (emphasis added). These statutes do not purport to constrain the Secretary of HUD's discretion in determining whether or not to provide such housing assistance.[2]

Plaintiffs point to three provisions that they claim limit the Secretary's discretion: HCDA § 801,[3] HCDA § 902,[4] and NNPA

---

1. Plaintiffs other jurisdictional allegations—28 U.S.C. § 2201, Fed.R.Civ.P. 19(a), and the doctrine of pendent jurisdiction, Complaint ¶ 1— are defective. Section 2201 authorizes a declaratory-judgment action only in cases properly within the federal jurisdiction. Rule 19(a) does not create subject-matter jurisdiction. The doctrine of pendent jurisdiction is inapplicable because the complaint alleges only federal, not state, claims; nor can there be pendent jurisdiction when a claim lacks any subject-matter jurisdiction whatsoever.

2. The statutes do contain technical requirements that guide the Secretary's decision, 12 U.S.C. § 1701q(a)(2)(A)–(C), (f); 42 U.S.C. § 1437f(c), (d), but they are unrelated to plaintiffs' claims here.

3. Section 801 states:

    The Congress declares that if the national housing goal is to be achieved, a greater effort must be made to encourage the preservation of existing housing and neighborhoods through such measures as housing preserva-

§ 202.[5] They contend that these provisions "undeniably state a Congressional policy that the national housing laws be administered ... with an affirmative concern for preserving decent housing." If HUD agreed to fund the Site 2A project "without having considered the issue of plaintiffs' homes, or without having made some affirmative effort to preserve plaintiffs' homes, then HUD has ignored the mandate of Congress; and that is illegal." Plaintiffs' Supplemental Memorandum at 6–7 (footnote omitted).

This argument is unavailing for two reasons. First, the cited sections are not constraints on the two types of funding decisions made here. The provisions pursuant to which HUD has acted do not require the Secretary to attempt to preserve plaintiffs' homes. *See* 12 U.S.C. § 1701q(a)(2); 42 U.S.C. § 1437f(b). Nor do the sections cited by plaintiffs impose any such obligation. HCDA § 801 is a broad declaration of purpose that encourages preservation of existing housing. HCDA § 902 is the preamble to a law requiring HUD to study and make recommendations on minimizing involuntary displacement. NNPA § 202, the preamble to a law establishing a commission to study neighborhood deterioration, generally encourages conservation of existing neighborhoods. These provisions do not

purport, nor can they reasonably be construed, to limit the Secretary's broad discretion in financing lower-income housing. Plaintiffs point to nothing in the legislative history of these sections that suggests otherwise.

Even if these provisions were intended to constrain HUD's funding decisions, APA review would nevertheless be unavailable. These broad declarations of policy, taken alone, cannot be translated into manageable standards for judicial review. "[A]gency action is committed to agency discretion where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Greater New York Hospital Association v. Mathews*, 536 F.2d 494, 499 (2d Cir. 1976) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971)). That is precisely the situation here. The Congressional declarations upon which plaintiffs rely at most encourage HUD, in HCDA § 902's words, to minimize dislocation "consistent with other program goals and objectives." Had Congress sought to provide standards by which courts could review the dislocative effects of HUD funding decisions, it would have adopted more precise substantive requirements, rather than ambiguous declarations of policy. An

tion, moderate rehabilitation, and improvements in housing management and maintenance, in conjunction with the provision of adequate municipal services.
42 U.S.C. § 1441a(c).

4. Section 902 states:
The Congress declares that in the administration of Federal housing and community development programs, consistent with other program goals and objectives involuntary displacement of persons from their homes and neighborhoods should be minimized. In furtherance of the objective stated in the preceding sentence, the Secretary of Housing and Urban Development shall conduct a study on the nature and extent of such displacement, and, not later than January 31, 1979, shall report to the Congress on recommendations for the formulation of a national policy to minimize involuntary displacement caused by the implementation of the Department's programs, and to alleviate the problems caused by displacement of residents of the Nation's cities due to residential and commercial development and housing reha-

bilitation, both publicly and privately financed.
42 U.S.C.A. foll. § 5313 (Historical Note).

5. Section 202 states:
(a) The Congress finds and declares that existing city neighborhoods are a national resource to be conserved and revitalized wherever possible, and that public policy should promote that objective.
(b) The Congress further finds that the tendency of public policy incentives to ignore the need to preserve the built environment can no longer be defended, either economically or socially, and must be replaced with explicit policy incentives encouraging conservation of existing neighborhoods. That objective will require a comprehensive review of existing laws, policies, and programs which affect neighborhoods, to assess their impact on neighborhoods, and to recommend modifications where necessary.
42 U.S.C.A. foll. § 1441 (Historical Note).

attempt to review HUD's actions here pursuant to the three provisions would merely invite the Court to substitute its preferences for the Secretary's. Because APA review is unavailable here, plaintiffs' first claim must be dismissed for failure to state a cause of action upon which relief could be granted. Fed.R.Civ.P. 12(b)(6).

## II. The Section 1983 Claims.

Plaintiffs' second and third claims allege that the Department of Housing Preservation and Development has violated 42 U.S.C. § 1983, by causing "plaintiffs to be deprived of a right secured to plaintiffs by the laws set forth in paragraph 36" (i. e., the three provisions discussed above), and by violating "the requirements of Title I of the Housing and Community Development Act of 1974 ... in that the City ..., in obtaining Community Development Block Grant Funds, agreed to conserve and preserve existing housing." Complaint ¶¶ 37, 38.

■ Plaintiffs assert federal-question jurisdiction pursuant to section 1331, yet they fail (in either their original or amended complaint) to allege the $10,000 amount in controversy required for federal-question suits against all parties other than federal officials. This pleading defect alone precludes them from relying upon section 1331. *Phillips v. Rockefeller*, 321 F.Supp. 516, 519 (S.D.N.Y.), aff'd, 435 F.2d 976 (2d Cir. 1970); see *United States v. Capelletti Brothers, Inc.*, 448 F.Supp. 66, 67 (S.D.Fla. 1978), aff'd, 621 F.2d 1309 (5th Cir. 1980); *De Gideo v. Sperry-Univac Co.*, 444 F.Supp. 183, 184 (E.D.Pa.1978).

■ Even assuming that the requisite jurisdictional amount were alleged, or included by amendment, these claims would be dismissed on the merits. Section 1983 does not create substantive rights; rather, it "merely provides a remedy for the violation of rights conferred by the Constitution or other statutes." *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 2574 n.11, 65 L.Ed. 653 (1980). "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979). The question, then, is whether the statutes invoked by plaintiffs confer legal rights upon them for purposes of section 1983.

■ Significantly, plaintiffs' first complaint was predicated, not upon section 1983, but upon the federal housing law provisions referred to in their amended complaint. The Department moved to dismiss, establishing that, under even a generous reading, these provisions do not create a private right of action. Plaintiffs did not concede the validity of the Department's analysis, but they nevertheless amended their complaint to allege that their suit was based upon section 1983, rather than upon the housing laws. Plaintiffs reason as follows:

> Plaintiffs are not asserting a private right of action under the housing statutes. Plaintiffs are not asking this Court to review those statutes ... to find or imply a private right of action in their favor. That is not necessary because when someone, such as [the Department], acting under color of law, deprives plaintiffs of any "rights, privileges, or immunities secured by ... laws (42 U.S.C. § 1983)", then plaintiffs have an explicit, statutory, remedy. Nothing need be implied.

Plaintiffs' Memorandum at 21–22 (footnotes omitted).

This reasoning is flawed. Despite plaintiffs' disclaimer, they are indeed suing over violations of the housing statutes—as they put it, over the Department's circumvention of "Congressional statements of policies and objectives." *Id.* at 4. In effect, they attempt to assert a private right of action under these statutes, given that plaintiffs cannot sue for a violation of section 1983 itself. Plaintiffs' strategy of recharacterizing their housing-law claims as section 1983 claims cannot succeed, or else the restraints upon judicial implication of private remedies would be eviscerated: a party that

could not bring a private suit under a particular statute could simply restyle its grievance as a section 1983 action for violation of the very same statute.

 The Department has established, without contradiction by plaintiffs, that the federal housing provisions incorporated into the second and third claims do not create a private right of action. Nor do these statutes confer any federal rights upon plaintiffs. The three sections referred to in the second count are broad statements of purpose, not substantive provisions creating new federal rights. Title I of the Act, referred to in the third claim, governs the relationship between the federal and local governments—it does not, even implicitly, address the rights of private parties. Congress expressly provided means by which the Secretary could enforce the requirements of Title I against local agencies such as the Department, 42 U.S.C. § 5311, and no other mechanism for administrative enforcement was provided. Under plaintiffs' interpretation, any party opposed to the proposed demolition of a building pursuant to an urban renewal program would have a federal claim under section 1983. Not surprisingly, plaintiffs can cite no authority in support of this proposition. The City's brief, on the other hand, establishes that neither the language, nor the legislative history supports the view that Congress intended to create a private remedy in the statutes involved, and that to imply a remedy would be inconsistent with the legislative purpose of having the responsible agencies and local governments determine which plans are in the best interests of all affected persons. City Defendant's Memorandum of Law, at 10–25.

The validity of plaintiffs' factual assertions as to the need for the planned demolition need not be resolved, although the Department and the Board of Estimate undoubtedly considered the issue of whether the buildings should be demolished. Even assuming that the facts are as plaintiffs allege, their complaint is one that the federal courts can neither hear nor remedy. It is dismissed with prejudice. Fed.R.Civ.P. 12(b)(1), 12(b)(6).

SO ORDERED.